UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| SIMEON BRIGGS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 22-31WES |
| | : | |
| LINDA AMADO, | : | |
|     Defendant. | : | |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Having been granted *in forma pauperis* ("IFP") status by the Court, Plaintiff Simeon Briggs, a prisoner proceeding *pro se*, has filed his fourth motion for appointment of counsel in this case brought pursuant to 42 U.S.C. § 1983. ECF No 84. Defendant Linda Amado sued individually and in her official capacity, objects to the motion. ECF No. 86. The motion has been referred to me for determination. 28 U.S.C. § 636(b)(1)(A); DRI LR Cv 72(a).

**I.  Background**

Plaintiff's original complaint alleged that his involuntary transfer on June 8, 2021, from RIDOC's Adult Correctional Institutions ("ACI") to custody in a state prison in Virginia without notice, a hearing, an opportunity to be heard, or a written statement of reasons deprived him of due process pursuant to the United States Constitution. At screening, I recommended that this complaint be dismissed because the transfer of a prisoner from a state prison in one state to one in a different state does not implicate a liberty interest in and of itself within the meaning of the Due Process Clause, citing, *inter alia*, Olim v. Wakinekona, 461 U.S. 238, 240, 248 (1983). ECF No. 9. Plaintiff's Second Amended Complaint ("SAC," ECF No. 15) was filed on March 29, 2022, naming Rhode Island Department of Corrections ("RIDOC") and seven of its officials and adding the new claim that Defendant Amado had directed the transfer to Virginia in

retaliation for a series of grievances that Plaintiff filed during the period preceding the transfer. ECF No. 15 at 6-7. The motion to amend was granted and the SAC became the operative pleading. ECF No. 14. The Court denied Plaintiff's first motion for appointment of counsel, finding it premature to determine whether exceptional circumstances existed to support appointment of counsel. Id. at 3.

In the SAC, Plaintiff alleges that the retaliation claim is based on the statement of an unnamed officer that, "[t]his is what happens to people who talk to lawyers and write grievances." ECF No. 15 at 7. Plaintiff claims that "[t]here is documentary proof to Support Plaintiff's Complaint that [Defendants had] 'evil intentions' when they transferred the plaintiff out of State." Id. at 4. In addition to the claim of having filed "over 20 grievance," the SAC alleges that Plaintiff "had three Attorney's Coming to See him." Id. at 6. To factually support these allegations, in a filing that the Court rejected for the lack of a motion to amend, Plaintiff lists twelve grievances that he filed in 2020 and six in 2021. ECF No. 73 at 3. The last of these are three grievances dated in April 2021, which complain that the Classification Board "held [Plaintiff] back" because it improperly considered two charges that had been dismissed. Id. This filing also alleges that, during February and March 2021, Plaintiff was in correspondence with and was visited by attorneys from the Rhode Island Center for Justice regarding RIDOC "staff misconduct." Id. In addition, Plaintiff relies on 2010 and 2014 incidents at the ACI during which various inmates engaged in violent conduct. ECF No. 15 at 8. He alleges that none of these inmates filed grievances and therefore none of them were transferred out of state. Id. Seemingly, Plaintiff seeks to draw the inference that inmates who file grievances are transferred out of state, while those who refrain are not transferred.

In support of his allegation of "documentary proof," ECF No. 15 at 4, Plaintiff has filed four "Exhibits" that include copies of fifteen grievances and two 2020 letters from an attorney from the Rhode Island Center for Justice about his complaints and concerns. See ECF Nos. 22, 23, 24, 25. These Exhibits contain eleven grievances from March through June 2020. ECF Nos. 22, 23, 24. Despite this cluster of grievances, Plaintiff was not transferred out-of-state in 2020. The Exhibits contain one grievance in February 2021 alleging that two RIDOC employee assaulted Plaintiff and three grievances in April 2021 (two of which appear related). ECF Nos. 23, 24, 25. The last of these is dated April 23, 2021, which appears to complain of the Classification Board's consideration, *inter alia*, of a booking dismissed by the Warden because of Plaintiff's mental illness, as well as its consideration of a fight Plaintiff argues would not have happened if he had not been in disciplinary confinement. ECF No. 25 at 5. This last grievance was filed more than six weeks before the transfer order. These Exhibits also include a copy of the Transfer Order dated June 8, 2021; as a reason for Plaintiff's transfer to Virginia, it states, "this Department feels rehabilitative or security goals can best be met in a correctional institution outside of Rhode Island." ECF No. 25 at 6.

On September 6, 2022, the Court granted in part Defendants' motion to dismiss. Text Order of Sept. 6, 2022. Based on Plaintiff's allegations (taken as true at the motion to dismiss phase), the Court held that the claim of transfer in retaliation for grievances states a claim against Defendant Amado, but that the due process claims, Eighth Amendment claims and claims against other Defendants all fail; these were dismissed. Id. The Court also denied Plaintiff's motion for preliminary injunction (seeking an Order that he be returned to Rhode Island) because he failed to establish a likelihood of irreparable harm. Id. In so holding, the Court noted that Plaintiff "appears to be represented by competent counsel in his state court post-conviction relief

proceeding." Id. Plaintiff appealed this decision and filed his second and third motions for appointment of an attorney. The motions for appointment of counsel were denied "without prejudice to refiling after the appeal." Text Order of Mar. 17, 2023. On September 11, 2023, the Court of Appeals dismissed the interlocutory appeal of the grant in part of the motion to dismiss; it affirmed the Court's denial of the motion to order Plaintiff returned to Rhode Island, finding "no abuse of discretion or other error in the denial." ECF No. 76, First Circuit Judgment of Sept. 11, 2023.

After the appeal terminated, Defendant Amado filed her answer, and the parties began discovery. Plaintiff has aggressively prosecuted discovery, including serving interrogatories, seeking production of documents and filing motions to compel production. See e.g., ECF No. 82; Text Order of Nov. 28, 2023.

On January 10, 2024, Plaintiff filed his fourth motion for appointment of counsel. ECF No. 84. In it, he alleges that he has been denied access to certain documents because Defendant Amado claims they would compromise the safety and security of the institution. ECF No. 84 at 2. However, Plaintiff's motion for appointment of counsel was filed on January 10, 2024; as of December 27, 2023, the Court had extended Defendant's time to respond to these requests to January 31, 2024, so that Defendant could "resolve logistics," including with respect to safety and security, so that these materials could safely be provided. Text Order of Dec. 27, 2023. As of this writing, the record does not reflect that she failed to do so.

II.     **Applicable Law and Analysis**

The law does not create an absolute right to appointed counsel in a civil case. DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991); Albanese v. Blanchette, C.A. No. 20-00345-WES, 2021 WL 5111862, at *1 (D.R.I. Nov. 3, 2021). In addition to establishing indigency, a civil

litigant seeking the appointment of *pro bono* counsel must also sustain the burden of demonstrating that "exceptional circumstances [are] present such that a denial of counsel [is] likely to result in fundamental unfairness impinging on his due process rights." DesRosiers, 949 F.2d at 23.  In determining whether exceptional circumstances exist, the Court "must examine the total situation, focusing, *inter alia*, on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself." Id. at 24.  In making the determination, the Court may consider the litigant's ability to procure an attorney on his own, as well as, for a case like this one involving a claim that, if meritorious, could result in the recovery of attorney's fees, whether the reason for the difficulty in finding an attorney is because it is "a meritless case that no lawyer would take were the plaintiff not indigent." Stack o/b/o Doe v. Town of Lincoln Hous. Auth., C.A. No. 20-350WES, 2021 WL 1904537, at *2 (D.R.I. May 12, 2021) (internal quotation marks omitted); see Lim v. Westin Hotel, No. 89 C 3078, 1989 WL 44146, at *1 n.3 (N.D. Ill. Apr. 24, 1989) (noting "that the unwillingness of private counsel to take on representation despite" the prospect of attorney's fees "might perhaps be viewed as an indication of the perceived doubtfulness of [plaintiff's] claims").  In exercising its discretion to appoint a *pro bono* attorney, the Court must also be mindful that "volunteer lawyer time is a precious commodity." Lockett v. Derose, Civil No. 3:CV-08-1643, 2009 WL 1917071, at *1 (M.D. Pa. July 1, 2009) (internal quotation marks omitted).

Plaintiff's motion for counsel stumbles at the first DesRosiers factor – the merits of the case.  Having carefully reviewed not just Plaintiff's SAC, but also the "total situation," DesRosiers, 949 F.2d at 24, including Plaintiff's other filings (particularly his documentary support) as summarized above, I do not find that Plaintiff's claim has sufficient merit to establish that "exceptional circumstances [are] present such that a denial of counsel [is] likely to result in

5

fundamental unfairness impinging on his due process rights." Id. at 23.  Rather, what Plaintiff has presented is an unremarkable set of grievances, combined with far-from-unusual ongoing contact with an attorney from the well-regarded Rhode Island Center for Justice.  Plaintiff's pivotal allegation about the statement of a correctional officer purporting to causally link the transfer decision made by Defendant Amado to these grievances depends on Plaintiff's ability to establish not only that this statement falls within a hearsay exception pursuant to Fed. R. Evid. 801(d)(2), but also that the statement reflects the reasoning of Defendant Amado in deciding to transfer Plaintiff to Virginia.  So far, this record lacks evidence suggesting he will be able to do so.[1]  See Siggers-El v. Barlow, 433 F. Supp. 2d 811, 818 (E.D. Mich. 2006) (evidence is sufficient to support finding that prison official arranged for transfer through manipulation of transfer system for retaliatory and malicious purpose); Briggs v. Wall, C.A. No. 09-456 S, 2009 WL 4884529, at *4 (D.R.I. Dec. 16, 2009) (recommending dismissal at screening of claim of retaliation for filing grievances because threat is vague and adverse action unspecified; third element of retaliation – causal connection – not reached).

     Plaintiff's motion for counsel also fails due to Plaintiff's ability either to procure an attorney or to litigate this case on his own.  Regarding his ability to find an attorney on his own, Plaintiff's filings reflect he has had significant access to civil rights attorneys in this state, including that he has been in ongoing written communication with the Rhode Island Center for Justice.  I also consider the Court's text order denying Plaintiff's motion for preliminary injunction, which states that Plaintiff "appears to be represented by competent counsel" in his ongoing state post-conviction relief proceeding.  Text Order of Sept. 6, 2022.  In a case like this one, based on 42 U.S.C. § 1983, which provides for an award of attorneys' fees to a prevailing

---

[1] To be clear, I am not making a determination that Plaintiff will not prevail on this issue.  Rather, I am assessing the merits of the case as presented to me so far for the purpose of determining whether counsel should be appointed.

claimant, these facts raise the Court's concern that Plaintiff may have been unable (though he makes no representation that he has tried) to secure counsel willing to accept the engagement due to "perceived doubtfulness of [his] claims." See Lim, 1989 WL 44146, at *1 n.3. Further, I find that this case is not factually or legally complex, as well as that Plaintiff's filings in this Court have consistently been clear, coherent, articulate and well-reasoned, including accurate and appropriate citation to legal authorities. Thus, the filings establish that Plaintiff appears to be more than capable of continuing to prosecute this case *pro se*. Further, as of this writing, there is no suggestion that Plaintiff and Defendant have not been able solve the logistical problems that the Court addressed in the Text Order of December 27, 2023. And if they have not, Plaintiff has shown himself to be capable of filing a motion to compel.

In sum, as of now, Plaintiff has failed to establish that he lacks the ability to find an attorney or to continue to litigate *pro se*. Nor does his case have merit sufficient to justify a finding of exceptional circumstances. Therefore, I find that the denial of counsel will not result in fundamental unfairness impinging on his due process rights. Buzon v. Forgue, C.A. No. 19-212WES, 2019 WL 2474123, at *2 (D.R.I. June 13, 2019).

### III.  Conclusion

Based on the foregoing, Plaintiff's fourth motion for appointment of counsel (ECF No. 84) is DENIED without prejudice.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 29, 2024