```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF RHODE ISLAND
_____
                                   )
SIMEON BRIGGS,                     )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )   C.A. No. 22-31 WES
                                   )
LINDA AMADO,                       )
                                   )
        Defendant.                 )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Senior District Judge.

Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), Dkt. No. 144, and "Defendant's, Linda Amado, Motion for Summary Judgment" ("Defendant's Motion"), Dkt. No. 160. The Court finds that no hearing is necessary. For the following reasons, Plaintiff's Motion is DENIED and Defendant's Motion is GRANTED.

### I. BACKGROUND

In 2003, Plaintiff Simeon Briggs began serving a life sentence for first-degree murder at the Rhode Island Department of Corrections ("RIDOC"). Statement of Undisputed Facts Precluding Pl.'s Mot. ("DSUF") ¶ 30, Dkt. No. 186. While in RIDOC custody, Briggs committed dozens of disciplinary infractions, including a 2009 gang-related assault for which he is serving a consecutive, twenty-year sentence, and in 2012, he was transferred to the

Federal Bureau of Prisons (the "FBOP"). Id. ¶¶ 31-39; see id. Ex. N, Dkt. No. 186-14.

On December 9, 2019, the FBOP sent RIDOC's Classification Office a letter requesting that RIDOC retake custody of Briggs, as it was "unable to continue to house him due to his extensive management concerns." Id. ¶¶ 40-41; see id. Ex. G, Dkt. No. 186-7. Rather than retake custody of Briggs, RIDOC sought to arrange his transfer from the FBOP to "correctional institutions outside of Rhode Island," which it believed "were better suited to provide [him] with an opportunity for placement in a less restrictive setting." Id. ¶¶ 42-44. RIDOC therefore sent a transfer package for Briggs to fellow member states of the Interstate Corrections Compact and, on January 10, 2020, the Virginia Department of Corrections ("VADOC") sent a letter to RIDOC stating that it would accept his transfer. Id. ¶¶ 43, 45-46; see id. Ex. H, Dkt. No. 186-8; see also id. ¶¶ 27-28; id. Ex. A, Dkt. No. 186-1.

RIDOC had thirty days upon receipt of the FBOP's December 9 letter to retake custody of Briggs or coordinate his transfer to another location. Id. ¶¶ 52; see also id. Ex. A, at 12. Because RIDOC was unable to coordinate Briggs's transfer from the FBOP to VADOC within that timeframe, RIDOC retook custody of Briggs on January 17, 2020. Id. ¶¶ 47-54. Soon thereafter, "RIDOC placed an indefinite pause on interstate transfers due to Covid-19." Id.

¶ 55.

RIDOC "intended to effectuate VADOC's acceptance . . . when transfers resumed." Id. ¶ 56. A year after Briggs returned to RIDOC — on January 20, 2021 — "VADOC requested updated discipline and mental health records for [Briggs]." Id. ¶ 57. "At this time, RIDOC had resumed interstate transfers." Id. ¶ 58. But then, on February 1, 2021, VADOC rescinded its acceptance of the transfer request after a "large-scale assault" in one of its facilities affected its available bedspace. Id. ¶ 59. RIDOC therefore sent Briggs's transfer package to other members of the Interstate Corrections Compact. Id. ¶ 60. This proved unnecessary, however, because on May 25, 2021, VADOC reinstated its acceptance of Briggs's transfer. Id. ¶ 61; see id. Ex. I, Dkt. No. 186-9. After receiving a Notice of Involuntary Transfer from RIDOC dated June 8, 2021, Briggs was transferred to VADOC on a noncommercial flight. Id. ¶ 62, see id. Ex. J, Dkt. No. 186-10; see also id. ¶ 51. In the seventeen months he was at RIDOC before his transfer to VADOC, Briggs was found guilty of ten disciplinary infractions, id. ¶¶ 79-82; see id. Ex. L, Dkt. No. 186-12, and he was housed in RIDOC's High Security Center the entire time, id. ¶ 83; see id. Ex. P, Dkt. No. 186-16. Briggs has since returned to RIDOC custody. Id.

¶ 84.

\* \* \*

Briggs challenged his transfer to VADOC in a pro se Complaint filed in this Court on January 20, 2022. Compl., Dkt. No. 1. He has since successfully amended his Complaint twice, and the Court has since dismissed all but one of his claims. See Am. Compl., Dkt. No. 3; 2d Am. Compl., Dkt. No. 15; Text Order (Sep. 6, 2022); Text Order (Oct. 4, 2023). Briggs's sole remaining claim is that Defendant Linda Amado, RIDOC's Administrator of Classification Services, violated his First Amendment rights by transferring him to VADOC in retaliation for filing grievances against RIDOC staff. Text Order (Sep. 6, 2022); see 2d Am. Compl. ¶¶ 28, 35, 37-39. This claim is now before the Court on the parties' motions for summary judgment. Pl.'s Mot.; Def.'s Mot; see also Order 3, Dkt. No. 177 (denying Plaintiff's Motion in part and reserving on his First Amendment claim); Order 6, Dkt. No. 178 (reserving on Defendant's Motion).

**II. LEGAL STANDARD**

"A grant of summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Viscito v. Nat'l Planning Corp., 34 F.4th 78, 83 (1st Cir. 2022) (quoting Garcia-Garcia v. Costco Wholesale Corp., 878 F.3d 411, 417 (1st Cir. 2017)). "A genuine

issue of fact exists where the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (quoting Garcia-Garcia, 878 F.3d at 417). "The court must examine the record in the light most favorable to the nonmovant and must make all reasonable inferences in that party's favor." Id. (quoting Garcia-Garcia, 878 F.3d at 417) (internal quotation marks omitted).

"That both plaintiff[] and defendant moved for summary judgment does not change the underlying standard; [the court] simply determine[s] whether either side deserves judgment as a matter of law on the undisputed facts." Modeski v. Summit Retail Sols., Inc., 27 F.4th 53, 56 (1st Cir. 2022). "[E]ach motion is reviewed separately, drawing facts and inferences in favor of the non-moving party." Scottsdale Ins. v. United Rentals (N. Am.), Inc., 977 F.3d 69, 72 (1st Cir. 2020).

### III. DISCUSSION

Briggs filed his First Amendment retaliation claim against Amado under 42 U.S.C. § 1983. 2d Am. Compl. ¶¶ 1, 5. To succeed on this claim, Briggs must "demonstrate that (1) he engaged in constitutionally protected conduct, (2) he suffered an adverse action, and (3) there was a causal connection between the constitutionally protected conduct and the adverse action." Price v. Wall, 464 F. Supp. 2d 90, 96 (D.R.I. 2006). Regarding the third

5

element's causation requirement, Briggs "must prove that he would not have been transferred 'but for' the alleged reason." McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979). This "but-for" standard imposes a "substantial burden" on a plaintiff like Briggs, id., because "even if the defendant had an impermissible reason for the alleged adverse action, if a separate, permissible reason exists, the defendant will not be liable," Price, 464 F. Supp. 2d at 96; see also Sullivan v. Corr., Me. Warden, 96 F.3d 1430, at *1 (1st Cir. 1996) ("[I]f taken for both permissible and impermissible reasons, state action may be upheld if the action would have been taken based on permissible reasons alone.").

The first and second elements of Briggs's retaliation claim are not contested. Briggs engaged in constitutionally protected conduct when he filed grievances against RIDOC staff. DSUF ¶ 77; see also id. Ex. K, Dkt. No. 186-11. And he suffered an adverse action when he was transferred to VADOC. Only the third element — causation — is in dispute. Therefore, the Court must determine whether Briggs would have been transferred if he had not filed grievances against RIDOC staff.

The Court first reviews Defendant's Motion, "drawing facts and inferences in favor of [Briggs]." Scottsdale, 977 F.3d at 72. Even when viewed in this light, the record demonstrates there were permissible reasons for RIDOC to transfer Briggs independent of

his engagement in constitutionally protected conduct. As a result, Briggs's claim must fail. RIDOC first transferred Briggs in 2012 following a series of disciplinary infractions that led RIDOC to conclude he could no longer be safely or effectively housed within its system. DSUF ¶¶ 31-39; see also id. Ex. N, at 2, Dkt. No. 186-14. When the FBOP informed RIDOC that it could no longer house Briggs for related reasons, RIDOC sought to arrange his transfer to a different location rather than retake custody of him. Id. ¶¶ 40-44. Had RIDOC managed to coordinate Briggs's transfer from the FBOP to VADOC within the prescribed timeframe, he would not have returned to RIDOC. Id. ¶¶ 40-54. And had a pandemic not forced RIDOC to place an indefinite pause on interstate transfers, Briggs would not have remained in RIDOC custody for an extended period. Id. ¶¶ 54-56. In any event, Briggs filed the grievances while his transfer to VADOC was pending, which makes it difficult to argue that but for his decision to file those grievances, he would not have been transferred. See McDonald, 610 F.2d at 18.

To be sure, the record permits an inference in favor of Briggs that RIDOC did not immediately seek to transfer him once interstate transfers resumed. The record indicates that interstate transfers had resumed by January 20, 2021, when VADOC asked RIDOC for updated records. Id. ¶ 57. But it does not state when, exactly, RIDOC lifted its pause on such transfers. Therefore, when viewed in the

7

light most favorable to Briggs, the record suggests that although RIDOC "intended to effectuate VADOC's acceptance . . . when interstate transfers resumed," id. ¶ 56, it did not act on those intentions until sometime after the pause had been lifted, and only then in response to VADOC's request. Nevertheless, that VADOC reached out to RIDOC regarding Briggs's transfer in January 2021 demonstrates that the transfer was still pending at that time, which undermines the notion that his filing of grievances precipitated his transfer.

In short, the timeline of events surrounding RIDOC's transfer of Briggs to VADOC all but refutes his claim. And he faces other obstacles as well. First, as Administrator of Classification Services, Amado "oversees [RIDOC's] Interstate Office, a division of the Classification Office, which coordinates and facilitates" interstate transfers. Id. ¶¶ 75-76. Amado thus oversaw Briggs's transfer to VADOC. See id. Ex. J. Because the Interstate Office and Classification Office do not handle inmate grievances, however, "Amado ha[d] no personal knowledge" of the grievances Briggs had filed. Id. ¶ 78. This further weakens the notion of a causal link between Briggs's filing of grievances and his transfer to VADOC. Second, the record demonstrates that both RIDOC and the FBOP had difficulties housing Briggs safely and effectively, hence RIDOC's effort to coordinate his transfer out

8

of state rather than retake custody of him. Id. ¶¶ 42-44. Once Briggs returned to RIDOC from the FBOP, the record suggests that these difficulties persisted, given both his disciplinary history and his continuous placement in RIDOC's High Security Center. Id. ¶¶ 79-83. RIDOC therefore had a permissible reason to transfer Briggs even after he had been in its custody for an extended period, and that is regardless of its pending transfer arrangement with VADOC. See Price, 464 F. Supp. 2d at 96; Sullivan, 96 F.3d at *1.

Accordingly, the Court finds that Amado is entitled to summary judgment on Briggs's First Amendment retaliation claim as a matter of law, and for that reason declines review of Plaintiff's Motion.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment, Dkt. No. 144, is DENIED; and "Defendant's, Linda Amado, Motion for Summary Judgment," Dkt. No. 160, is GRANTED.

IT IS SO ORDERED.

/s/ WESmith
---
William E. Smith
Senior District Judge
Date: September 29, 2025